# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No.: _____

| | |
|---|---|
| PHILIP VON KAHLE,<br><br>        Plaintiff,<br><br>v.<br><br>CARGILL, INC.,<br><br>        Defendant. | PRIMARY CASE:<br>Southern District of New York<br>Case No. 21-cv-08532-AT |

## DEFENDANT CARGILL, INCORPORATED'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS AND FOR AUTHORIZATION FOR SUBSTITUTE SERVICE

      Cargill, Incorporated served non-party witnesses Raul Alvarez, Alfredo Romero, and Corporación Coex, Inc. ("Coex Panama") with subpoenas from a case pending in the Southern District of New York on several occasions and by multiple methods over the past several months. Both Mr. Alvarez and Mr. Romero, however, have declined to sit for a deposition or respond to the subpoenas to produce documents, claiming instead that Cargill has failed to effect personal service under Rule 45 of the Federal Rules of Civil Procedure. Likewise, although Cargill served Coex Panama with a subpoena for documents and for a deposition at its offices in El Salvador, Coex Panama, has refused to comply with the subpoenas.

      Coex Panama, Mr. Alvarez, and Mr. Romero are represented by the same counsel. Cargill attempted to work with these U.S.-based lawyers to overcome their various objections regarding the effectiveness of service on their clients and to coordinate deposition scheduling. Over the past several months, these U.S.-based lawyers represented that all three non-party witnesses were engaging in good-faith discussions with Cargill to see if an agreement could be reached on discovery that would avoid this very motion to compel. Despite several months of delay and efforts

by Cargill to reach a compromise, counsel for Mr. Alvarez and Mr. Romero recently informed Cargill during a June 22, 2022 phone conference that none of the witnesses would agree to sit for depositions or provide any discovery. The parties then agreed they were at an impasse on the issues raised by Cargill's subpoenas and on their efforts to resolve the dispute without Court intervention. Cargill now brings the following requests to the Court:

**With respect to Mr. Alvarez and Mr. Romero:**

Cargill moves to compel responses to its subpoenas from Mr. Alvarez and Mr. Romero under Federal Rule of Civil Procedure 45.[1] Both witnesses have been served at their various addresses within the United States as required by Rule 45. Cargill requests that the Court enter an order compelling Mr. Alvarez and Mr. Romero to comply with the subpoenas and (1) produce the requested documents and (2) appear for a deposition at a mutually agreeable date and time on or before August 31, 2022.

*In the alternative*, if the Court determines that Cargill has not sufficiently served Mr. Alvarez and Mr. Romero as required by Rule 45, Cargill requests that the Court authorize it to serve both witnesses through a combination of email and certified mail directed to Mr. Alvarez and Mr. Romero, care of the U.S.-based counsel that is already representing them in this matter.

**With respect to Coex Panama:**

Cargill has served Coex Panama at its offices in El Salvador pursuant to El Salvador law. While Coex Panama conducted extensive business in Florida, including business with Cargill, such that this Court has personal jurisdiction over the entity, Coex Panama does not maintain a

---

[1] Because Mr. Alvarez, Mr. Romero, and Coex Panama have completely failed to respond to the discovery sought by Cargill's subpoenas, this motion does not (and is not required to) set out each specific category of documents sought for inspection. *See* Local Rule 26.1(g)(2). Copies of the original Subpoenas are attached, as Exhibit A (Coex Panama Subpoenas); Exhibit B (Alvarez Subpoenas); Exhibit C (Romero Subpoenas).

registered agent in the United. States and Rule 45 of the Federal Rules of Civil Procedure requires service in the United States. Cargill therefore requests that the Court authorize it to serve subpoena on Coex Panama through Coex Panana's U.S.-based counsel. If Cargill completes service on Coex Panama through its U.S.-based counsel, the Court will have authority to compel compliance with those subpoenas under Rule 45.

## Background

### A. The underlying lawsuit in the Southern District of New York.

Raul Alvarez and Alfredo Romero are the principals and owners of Coex Panama. Coex Panama and its affiliates source coffee for import into the United States in partnership with Coex Coffee International, Inc. ("Coex Miami"), a Florida Corporation with its principal place of business in Miami-Dade County, Florida. Through this coffee import-export business, Coex Panama, Mr. Alvarez, and Mr. Romero regularly transacted business in the Southern District of Florida.

The underlying case in which Cargill seeks discovery from Mr. Alvarez, Mr. Romero, and Coex Panama is *Philip von Kahle v. Cargill Inc.*, Case Number 21-cv-08532, pending in the Southern District of New York ("SDNY Case").[2] Plaintiff in the SDNY Case is the assignee of Coex Miami in an assignment for the benefit of creditors proceeding, which is pending in the 11th Judicial Circuit Court of Florida in Miami-Dade County, Case No. 20-014293 ("Florida ABC Proceeding"). Plaintiff brings the SDNY Case against Cargill in his capacity as the assignee of the

---

[2] A copy of the operative complaint in the SDNY Case is attached as Exhibit D.

3

creditors of Coex Miami.[3] *See, e.g.*, *Akin Bay Co., LLC v. Von Kahle*, 180 So. 3d 1180, 1182–83 (Fla. Dist. Ct. App. 2015).

Plaintiff's complaint in the SDNY Case alleges that Coex Miami bought coffee and sold it to companies like Keurig and Starbucks. (Ex. D, ¶ 18). To source this coffee, Coex Miami worked with and purchased coffee from companies located in the countries where coffee is grown, including Coex Panama and its various affiliates. Mr. Alvarez and Mr. Romero's relatives, Ernesto Alvarez and Ernesto Romero, were the principals of Coex Miami until its assignment to Plaintiff in July 2020. (*Id.* at ¶¶ 3, 19).

Like other commodities, the price of coffee fluctuates based on a variety of factors impacting their supply and demand. These fluctuations create commodity price risks for producers, processors, and other physical users of commodities and a consequent need to hedge these risks in financial markets. Both Coex Panama and Coex Miami hedged the commodity price-risk associated with these price movements by entering into commodity swap agreements with Cargill's Risk Management business group. (*Id.* at ¶¶ 23, 29).

Specifically, in November 2014, Coex Panama entered a Master Over-The-Counter Swap Agreement ("Master OTC Agreement") with Cargill and amended that agreement five times over the course of the next six years.[4] Based on the Master OTC Agreement, Cargill and Coex Panama entered into numerous commodity swap agreements, which Coex Panama used to hedge price risk in its business of purchasing and selling coffee.

---

[3] The Assignee stands in the shoes of Coex Miami. The Assignee initially filed suit against Cargill in Florida state court, but the case was transferred to the SDNY based on a forum selection provision in an agreement between Cargill and Coex Miami.

[4] Copies of the Master OTC Amendments and Amendments are attached as Exhibit E.

Between April 2016 and January 2020, Coex Miami entered into three Guarantees with Cargill in connection with the commodity swap agreements between Cargill and Coex Panama. (Ex. D, ¶¶ 55–58).[5] Through these Guarantees, Coex Miami guaranteed Cargill payment in connection with Coex Panama's swap agreements, and Coex Miami agreed to indemnify Coex Panama up to a specified amount if Coex Panama became liable on its swaps. (Ex. D, ¶¶ 55–58; Exs. 2, 3, and 4 to Ex. D).

In the SDNY Case, Plaintiff seeks to avoid as fraudulent these Guarantees—Guarantees through which both Coex Panama and Coex Miami hedged price risk in their coffee import-export business. Plaintiff also seeks to recover from Cargill $91 million in transfers made by Coex Miami to Coex Panama's swap account with Cargill from 2015 to 2020. (*See, e.g.*, Ex D, ¶¶ 2, 23, 54–71, 144–181).

Plaintiff claims that Coex Miami defrauded its creditors by creating "fictitious purchase orders" to buy coffee from Coex Panama and then used those orders to support financing requests made to five banks: Bank Leumi; Professional Bank; Banesco; BICSA; and Synovus. (*Id.* ¶¶ 39–49). Plaintiff claims that each of these "fictitious purchase orders" indicated that Coex Miami would purchase coffee from an affiliate of Coex Panama like Coex Honduras or Commercial Exportadora. (*Id.* ¶¶ 44–45). But instead of purchasing coffee, Plaintiff claims that Coex Miami used the money to pay Coex Panama's swap accounts with Cargill. (*Id.* ¶ 39). Essentially, Plaintiff claims that Coex Miami and Coex Panama, along with their respective principals, committed a $91 million fraud.

---

[5] Copies of these Guarantees are attached to Exhibit D, the SDNY Complaints, as Exhibits 2 (2016), 3 (2017), and 4 (2020).

As the assignee of Coex Miami, Plaintiff seeks to hold Cargill liable for this alleged fraud under New York's Debtor and Creditor Law (NYDCL) or, in the alternative, under Florida's Uniform Fraudulent Transfer Act (FUFTA). Cargill disputes that it is liable by either statute or otherwise. Under the current schedule, fact discovery in the SDNY Case closes on December 19, 2022. The parties must complete all depositions in that case by November 11, 2022. (Ex. F, Scheduling Order in SDNY Case).

**B. Mr. Alvarez, Mr. Romero and Coex Panama regularly transacted business in Miami Florida.**

Through these swap agreements, Coex Panama—including its principals Mr. Alvarez and Mr. Romero—regularly transacted business with U.S.-based employees of Cargill, particularly employees based in Miami, Florida. (*See* Ex. D, SDNY Compl. at Ex. 1).[6] Cargill employees met with Mr. Alvarez and Mr. Romero regarding Coex Panama's business in Miami, Florida. Mr. Alvarez himself executed the five amendments to the Master OTC between 2014 and 2020. (*See*, Ex. E, Master OTC Agreements Amendments).

Documents produced in discovery in the SDNY Case to date show that Coex Panama and its affiliates engaged in numerous transactions with Coex Miami with significant sums of money flowing between Coex Miami, Coex Panama, and Coex Panama's affiliates (which Cargill's understands are also owned by Mr. Alvarez and Mr. Romero). Coex Miami's audited financial statements prepared by BDO USA LLP, for example, state that Coex Miami purchased "coffee from coffee suppliers related to the Company's management" totaling $56 million in 2019, $31

---

[6] Coex Panama also agreed to resolve any disputes arising out of the swap transactions under the Master OTC Agreement through arbitration in Miami, Florida. (Ex. E, Master OTC Agreement at section 11.5).

million in 2018, $41 million in 2017, and $19 million in 2016.[7] These related companies include affiliates of Coex Panama like Coex Honduras S.A. DE C.V., Coex Guatemala, and Commercial Exportadora S.A. DE C.V. (*See* Ex. H, 2018 List of Related Parties from BDO Audit). Similarly, documents made publicly available in the Florida ABC Proceeding show significant payments from Coex Panama to Coex Miami. (*See* Ex. I, Bank Statements filed in Florida ABC).

### C. Cargill's service of subpoenas and efforts reach an agreement with counsel for Mr. Alvarez, Mr. Romero.

The business relationship between Coex Panama and Coex Miami is at the center of Plaintiffs' allegations in the SDNY Case. To obtain information on the relationship between the companies and the transactions at issue in the SDNY Case, Cargill issued subpoenas from the Southern District of New York for both documents and depositions to Coex Panama, Mr. Alvarez, and Mr. Romero, seeking depositions and production of documents. (*See* Exs. A–C). The subpoenas noticed deposition dates in May 2022, but Cargill offered to work with the various parties to find convenient dates. (*Id.*)

Because Coex Panama, Mr. Alvarez, and Mr. Romero regularly transact business within the Miami, Florida area, the subpoenas set the place of compliance as 44 W Flagler Street, Suite 2100, Miami—within the Southern District of Florida. *See* Fed. R. Civ. P. 45(e)(1), (e)(2) (providing that a subpoena may command a person to attend a deposition or produce documents "within 100 miles of where the person resides, is employed, or regularly transacts business in person.").

---

[7] Copies of Coex Miami's Audited Financials for the years 2016 and 2017, 2017 and 2018, and 2018 and 2019 are collectively attached as Exhibit G. *See* Ex. G at PVK00146756, PVK 0156269, and PVK00171380.

7

To effect service of the subpoenas, Cargill conducted background checks on Mr. Alvarez and Mr. Romero along with their relatives, Ernesto Alvarez and Ernesto Romero. These background checks indicated that Raul Alvarez maintained a home at 789 Crandon Blvd., Apt. 703 in Key Biscayne, Florida, and that Alfredo Romero maintained a home at 181 Crandon Blvd., Apt. 201 in Key Biscayne. Cargill then attempted to serve Mr. Alvarez and Mr. Romero with subpoenas at each of these locations.

On March 10, 2022, Cargill's process server executed a Return of Service stating that he served a co-resident of Mr. Romero, Edilma Correto, at 181 Crandon in Key Biscayne. (Ex. J, March 11, 2022, Return of Service).

Cargill's process server also made four attempts to serve Mr. Alvarez at 789 Crandon Blvd., Apt. 703 in Key Biscayne. (Ex. K, March 22, 2022, Correspondence). But, while the process server received confirmation that Mr. Alvarez resided at the location at least part of the time, he was not able to effect personal service because Mr. Alvarez was not present at the time. (*Id.*)

On March 18, counsel for Cargill reached out to the U.S.-based lawyers already representing Coex Panama in connection with the Florida ABC Proceeding (Rivero Mestre LLP) asking if they also represented Mr. Alvarez and Mr. Romero. (Ex. L, Correspondence). On March 23, counsel from Rivero Mestre LLP responded that, in addition to representing Coex Panama, they also represented personally both Mr. Alvarez and Mr. Romero and instructed Cargill not to contact either witness directly. (*Id.*) ("Our firm represents Mr. Alvarez and Mr. Romero; do not contact them directly.") Cargill followed up on March 24 by providing a copy of the subpoena for Mr. Romero served at 181 Crandon, requesting to discuss responses. (*Id.*) Cargill also requested information on the appropriate location to serve Mr. Alvarez. (*Id.*)

On March 29, counsel for Mr. Alvarez and Mr. Romero simply responded, "Service of Mr. Romero's subpoena was ineffective for multiple reasons, including that the address to which the process server delivered the subpoena is not Mr. Romero's residence." (*Id*). Although counsel instructed Cargill not to contact the witnesses directly (for example by sending the subpoenas to their business emails), counsel for the witnesses also refused to provide any additional information on the appropriate locations to serve Mr. Alvarez or Mr. Romero or otherwise cooperate with respect to service. (*Id.*) When asked whether counsel for Mr. Alvarez or Mr. Romero would accept service on behalf of these clients to moot issues related to service, Mr. Alvarez's and Mr. Romero's counsel refused to do so.

Counsel for Cargill conferred several times telephonically with counsel for the witnesses to resolve this outstanding dispute regarding service of and compliance with the subpoenas. Cargill offered to conduct the depositions remotely or to travel to any location, including internationally, at the convenience of the witnesses to minimize any potential burdens. even though both Mr. Alvarez and Mr. Romero appeared to maintain homes in the Miami area. Ultimately, on May 6, 2022, counsel for Cargill and counsel for the witnesses agreed that they would attempt to resolve their dispute without Court intervention by having corporate designees from Coex Panama testify in lieu of Mr. Alvarez and Mr. Romero individually. Counsel for the witnesses agreed that they would review the topics proposed by Cargill in its Rule 30(b)(6) notices to Coex Panama and attempt to secure an agreement from Mr. Alvarez, Mr. Romero, and Coex Panama. (*See* Ex. M, Correspondence).

As these conversations with counsel continued, Cargill conducted additional background checks on Mr. Alvarez and Mr. Romero and again attempted to serve subpoenas on addresses associated with each of the two men. This time, Cargill identified multiple potential addresses for

each witness and sent subpoenas by both USPS First Class Mail and Federal Express on April 28 and 29, 2022. The following charts summarize the subpoenas sent by Cargill to provide notice to Mr. Alvarez and Mr. Romero in April 2022.

- Subpoenas sent to Mr. Romero:

|  | Delivery Method | Results |
| --- | --- | --- |
| Alfredo Romero<br>181 Crandon Blvd, Apt 201<br>Key Biscayne, FL 33149 | FedEx tracking:<br>272501881916 | Returned |
| Alfredo Romero<br>181 Crandon Blvd, Apt 201<br>Key Biscayne, FL 33149 | First Class Mail (Proof of Mailing<br>April 27, 2022) | Presumed delivered because not returned |
| Alfredo Romero<br>781 Crandon Blvd, Apt 901<br>Key Biscayne, FL 33149-2546 | FedEx tracking:<br>272502369790 | Delivered to residence<br>April 28, 2022<br>Signed by M. Badilt |
| Alfredo Romero<br>901 Ponce DeLeon Blvd., Suite 204<br>Coral Gables, FL 33134-3070 | FedEx tracking:<br>272502690841 | Delivered Receptionist/Front Desk<br>Signed W. Albornoz<br>April 28, 2022 |
| Alfredo Romero<br>901 Ponce DeLeon Blvd., Suite 204<br>Coral Gables, FL 33134-3070 | First Class Mail (Proof of Mailing April 27, 2022) | Returned |

- Subpoenas sent to Mr. Alvarez:

| Mr. Alvarez's Address | Delivery Method | Results |
| --- | --- | --- |
| Raul Alvarez<br>789 Crandon Blvd, Apt 703<br>Key Biscayne, FL 33149-2538 | FedEx tracking:<br>272502926110 | Delivered to residence<br>Signed for E. Enedt<br>April 28, 2022 |
| Raul Alvarez<br>789 Crandon Blvd, Apt 703<br>Key Biscayne, FL 33149-2538 | First Class Mail (Proof of Mailing April 27, 2022) | Presumed delivered because not returned |

10

| Mr. Alvarez's Address | Delivery Method | Results |
|---|---|---|
| Raul Alvarez<br>121 Crandon Blvd, Apt 248<br>Key Biscayne, FL 33149-1557 | FedEx tracking:<br>272503069721 | Delivered to residence<br>Signed for T. Teresa<br>April 29, 2022 |
| Raul Alvarez<br>170 Ocean Lane Drive, Apt 509<br>Key Biscayne, FL 33149-1449 | FedEx tracking:<br>272503363570 | Delivered to residence<br>Signed by H. Rodriguez<br>April 29, 2002 |
| Raul Alvarez<br>789 Crandon Blvd 1406<br>Key Biscayne, FL 33149-2540 | FedEx tracking:<br>272503573897 | Delivered to residence<br>Signed for E. Enedt<br>April 28, 2022 |

**D. Cargill's Efforts to Serve Coex Panama.**

In light of counsel's representations that its clients might be more willing to produce a witness to testify on behalf of Coex Panama pursuant to Fed. R. Pro. 30(b)(6) than to produce either Mr. Alvarez or Mr. Romero to testify, on May 3, 2022, Cargill also served a subpoena for documents and a subpoena for a deposition pursuant to Fed. R. Civ. Pr. 30(b)(6) on Coex Panama's offices in El Salvador. (Ex. N, Madrid Chavez Decl.) Completing this service required Cargill to incur the additional expense of retaining counsel in El Salvador. When the process server in El Salvador attempted to serve Coex Panama at its offices, however, the Coex Panama personnel present refused to identify themselves or accept service of the subpoena. Cargill's process server left the subpoena with a lawyer for Coex Panama who only identified herself as "Karla," refusing to provide any other information.[8]

---

[8] A translated copy of the Summons and Service Notice along with photos of the process server attempting to serve the subpoena are attached as Exhibit O.

11

After receiving notice of completed service from the process server in El Salvador, on May 18, Cargill again reached out to counsel for Mr. Alvarez, Mr. Romero, and Coex Panama, providing them with copies of each of the subpoenas and again requesting to confer on convenient deadlines for responses and dates for deposition. (*See* Ex. M). In response, counsel again disagreed that Cargill had completed service. But counsel for the witnesses also reiterated that, in lieu of a deposition of Mr. Alvarez and Mr. Romero, he "would try to take steps to secure a witness(es) [from Coex Panama]" to address Cargill's proposed topics. (*Id.*) When Cargill did not hear anything for a week, on May 26, Cargill again followed up and asked for the status, and expressly asked if counsel was now refusing to put up a 30(b)(6) witness for Coex Panama as well. (*Id.*) The parties again conferred by telephone on June 1 and counsel stated they still needed to follow up with their clients regarding whether Coex Panama would be willing to produce a Rule 30(b)(6) witness in late July or August 2022 to provide the necessary discovery. In that discussion, Cargill stated that, if it obtained the necessary discovery from a representative for Coex Panama in a deposition, it would not seek personal depositions of Mr. Alvarez or Mr. Romero. (*Id.*) After months of delay through these negotiations, in a phone call on June 22, counsel finally informed Cargill that its clients would not agree to provide a corporate witness for Coex Panama in lieu of the individual depositions and that the parties were at an impasse. (Ex. P, 6/22/2022 email). This motion follows the impasse reached on June 22, 2022.

**Jurisdiction and Venue**

Venue is proper in this Court. While the underlying action is pending in the Southern District of New York, Rule 45 distinguishes between the "issuing court" and the "court of compliance." *See* Fed R. Civ. P. 45(a)(2), (c)(2)(A). Because the place of compliance in the

subpoenas is within the Southern District of Florida, any motions related to those subpoenas must be brought before this Court. *See* Fed. R. Civ. P. 45(d)(2)(b), (d)(3), 45(e)(2)(B).

The Court also has personal jurisdiction over Coex Panama, Mr. Alvarez, and Mr. Romero because they all conducted significant business in the state of Florida and in this district. This business included sales of coffee to Coex Miami and other entities and swap agreements with Cargill employees based in Florida.

The business conducted by Coex Panama, Mr. Alvarez, and Mr. Romero in Florida is at the center of the complaint and allegations in the SDNY Case, which claims that Coex Miami and Coex Panama, along with their respective principals, committed a $91 million fraud through transactions based out of Florida. Cargill's subpoenas seek information directly related to the business conducted by Coex Panama, Mr. Alvarez, and Mr. Romero in Florida. This includes information on the transfers of funds and coffees trades between Coex Panama, its affiliates, and Coex Miami, Miami and the hedging relationship with Cargill.

These contacts provide the Court with the necessary personal jurisdiction to enforce subpoenas that seek information directly related to the witnesses' business in Florida. *See, e.g.*, *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (holding that specific personal jurisdiction requires showing the claims "arise out of or relate to" at least contacts with Florida and that the nonresident "purposefully availed" himself of the privilege of conducting activities within Florida); *Gucci America, Inc v. Weixing Li*, 768 F.3d 122, 141–142 (2nd Cir. 2014) ("At least one circuit has translated this test to nonparty discovery requests by focusing on the connection between the nonparty's contacts with the forum and the discovery order at issue.");

**Argument**

**A. Federal Courts in Florida permit substitute service under Rule 45 in any manner that is reasonably calculated to ensure receipt of the subpoena by the deponent.**

Federal Rule of Civil Procedure 45 requires service of a subpoena by "delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1). Federal courts in Florida and this district, however, do not read Rule 45 as requiring actual *personal* service of subpoenas on nonparty witnesses. *See, e.g.*, *In re Falcon Air Exp., Inc.*, No. 06-11877-BKC-AJC, 2008 WL 2038799, at *2–4 (Bankr. S.D. Fla. May 8, 2008) (rejecting personal service as a requirement under Rule 45); *TracFone Wireless, Inc. v. SCS Supply Chain LLC*, 330 F.R.D. 613, 616 (S.D. Fla. 2019) ("[S]ubstantial recent authority from federal courts in Florida support that Rule 45 does not require personal service. . . .")

Instead, federal courts in both Florida and in this District interpret Rule 45 broadly to allow substitute service that is "'reasonably calculated' to ensure that receipt of the subpoena by the deponent." *In re Viacoa Itapemirin, S.A.*, 608 B.R. 268, 272–73 (Bankr. S.D. Fla. 2019); *see also In re Procom America, LLC*, 638 B.R. 634, 644 (Bankr. S.D. Fla. Mar. 21, 2022) (holding that service of a foreign national through his U.S.-based lawyer was effective under Rule 45 where the lawyer was actively representing the deponent); *TracFone Wireless*, 330 F.R.D. at 616 (holding that service by FedEx or UPS was sufficient under Rule 45); *In re Falcon Air Exp., Inc.*, 2008 WL 2038799, at *2–4 (holding that service on the deponent's wife at a residence where the deponent no longer resided was sufficient under Rule 45); *Codrington v. Anheuser-Busch, Inc.* No. 98-2417-CVI-26F, 1999 WL 1043861, at *2 (M.D. Fla. Oct. 15, 1999) (Where "it is undisputed that the deponent received actual notice of the subpoena, . . . requiring Plaintiffs to personally serve the subpoena would result in mere undue delay.").

**B. Cargill has already served Mr. Alvarez and Mr. Romero in a manner that was reasonably calculated to ensure receipt of the subpoenas, and the Court should compel them to respond.**

Cargill's service in the United States on Mr. Alvarez and Mr. Romero was "reasonably calculated" to ensure receipt of the subpoenas by Mr. Alvarez and Mr. Romero. Cargill first attempted to serve Mr. Alvarez and Mr. Romero at addresses obtained through background checks. Cargill's process server was able to serve a subpoena to a person at the address for Mr. Romero (181 Crandon Blvd.). Cargill's process server received confirmation that Mr. Alvarez maintained a residence at 789 Crandon Blvd. in Key Biscayne, and attempted service there on several occasions.

Despite this service at Mr. Romero's address and the multiple attempts at service at Mr. Alvarez's address, their counsel insisted that service was ineffective, but declined to provide any information to facilitate service. (*See* Exs. L, M). In an effort to resolve this dispute, Cargill then conducted additional background checks in an attempt to identify any other addresses for Mr. Alvarez and Mr. Romero. Cargill then mailed subpoenas by FedEx and First-Class USPS mail to the various locations that those background checks indicated were associated with each witness, including the 789 Crandon address where Cargill's process server had previously confirmed that Mr. Alvarez maintained a residence. Courts in this District find service by FedEx, UPS, or similar mailing "appropriately safeguards notice requirements in construing the Federal Rules of Civil Procedure." *TracFone Wireless*, 330 F.R.D. at 616.

Cargill also sent copies of the subpoenas to lawyers from Rivero Mestre LLP informing them again of the subpoenas to Mr. Alvarez and Mr. Romero. (*See* Ex. M). Courts have also held that service is effective when accomplished through counsel that is actively representing the witness because it assures that the witness should receive actual notice of the subpoena. *See, e.g.*, *In re Procom America LLC*, 638 B.R. at 643 n.45 (collecting cases). And that is what happened

here. After receiving copies of the various subpoenas sent by mail in late April, counsel for Mr. Alvarez and Mr. Romero then spent over a month representing the witnesses in negotiations with Cargill related to those subpoenas. As the United States Bankruptcy Court for the Middle District of Florida noted in finding effective service under Rule 45 in similar circumstances: "As a member of the Florida Bar, [Mr. Romero and Mr. Alvarez's] counsel had a duty to keep [them] reasonably informed about this matter." *In re Procom America LLC*, 638 B.R. at 644 (citing R. Regulating Fla. Bar 4-1.4(a)(3)). Thus, counsel's ongoing negotiations with Cargill "virtually guaranteed" that they would provide notice of the subpoenas to Mr. Alvarez and Mr. Romero. *In re Procom America LLC*, 638 B.R. at 644.

This notice, along with Cargill's efforts to serve by mail, were reasonably calculated to ensure the Mr. Alvarez and Mr. Romero received the subpoenas. Accordingly, service was completed under Rule 45.

Because Cargill served Mr. Alvarez and Mr. Romero with these subpoenas, the Court should compel Mr. Alvarez and Mr. Romero to respond by producing responsive documents and setting for depositions. Cargill remains willing to work with these witnesses on finding dates and locations that are convenient for them before the close of discovery in November 2022.

**C. In the alternative, the Court can authorize Cargill to serve both Mr. Romero and Mr. Alvarez through a combination of email and by serving their U.S.-based counsel.**

There is another option available if the Court believes that Cargill has not already served Mr. Alvarez and Mr. Romero under Rule 45: The Court could authorize service on Mr. Alvarez and Mr. Romero by email and through their U.S.-based counsel. Cargill has the email addresses for Mr. Alvarez and Mr. Romero through correspondence between Cargill employees and the witnesses related to swap agreements. Discovery in the SDNY Case also confirms that the

witnesses used these same email addresses to correspond with the principals of Coex Miami in their coffee businesses.

Rule 45 authorizes a party to "preemptively seek an order permitting alternative means of service." *Saadi v. Maroun*, Case No. 8:07-cv-1976-SCB-JSS, 2021 WL 8650800, at *2 (M.D. Fla. March 22, 2021); *see also*, *TracFone Wireless*, 330 F.R.D. at 616 (granting plaintiff leave to serve subpoenas by Federal Express or United Parcel Service). Courts have also found that service of a subpoena by email is appropriate with and even without prior Court authorization. *Saadi*, 2021 WL 8650800, at *3 (approving service of a deposition subpoena by email); *Rainey v. Taylor*, No. 18-24802-mc, 2019 WL 1922000, at *2 (S.D. Fla. Apr. 30, 2019) (finding that electronic service of a subpoena was proper after diligent attempts at personal service failed and the recipient received actual notice of the subpoena). To date, Cargill has refrained from service through Mr. Alvarez's and Mr. Romero's email addresses based on the directive from Mr. Alvarez's and Mr. Romero's counsel that Cargill should not contact these represented persons directly. With the Court's permission, Cargill would serve these subpoenas on Mr. Alvarez and Mr. Romero at their email addresses and would also serve the actual subpoenas, along with the necessary witness fees, to Rivero Mestre LLP, the U.S.-based lawyers representing Mr. Alvarez and Mr. Romero at their offices in Miami. Service by this method would certainly provide actual notice to the witnesses and comport with Rule 45.

### D. The Court should likewise authorize Cargill to serve Coex Panama through its U.S.-based counsel.

Rule 45 requires service of a subpoena "in the United States," and while Cargill served Coex Panama at its offices in El Salvador, it has not located a corporate address for Coex Panama in the United States. Depositions in the SDNY Case must be completed in the next four months, and Cargill has already spent several months attempting to serve Coex Panama and then conferring

17

with Coex Panama's U.S.-based counsel to reach an agreement on depositions. These discussions have only resulted in delay. Additional efforts by Cargill to serve Coex Panama in foreign countries, including El Salvador or Panama, are likely to result in additional delays and may never produce a response for Coex Panama.

The Court can prevent these further delays by authorizing Cargill to serve Coex Panama through its U.S.-based lawyers in Miami. Rule 45 permits substitute service on a corporation just as it does an individual. *See Powell v. Time Warner Cable, Inc.*, 2010 WL 5464895 (S.D. Ohio Dec. 30, 2010) (approving service of subpoena by certified mail to non-party Mettler Toledo, Inc. (MT) where defendant and MT "communicated prior to the issuance of the subpoena," and "it is undisputed MT received the subpoena"); *Castleberry v. Camden County*, 331 F.R.D. 559 (S.D. Ga. 2019) (sanctioning, after the fact, service of subpoena by mail to non-party corporation); *Diaz v. Chapters Health System, Inc.*, 2020 WL 203157 (M.D. Fla. Jan. 6 2020) (in class action settlement, granting leave to serve subpoenas to financial institutions "to obtain the applicable bank identification numbers of the Settlement Class Members" through FedEx).

Additionally, "[n]umerous courts have held that service on a foreign national's domestic counsel is 'reasonably calculated' to give notice and an opportunity to respond to a foreign national." *See In re Procom*, 638 B.R. at 642; *see also*, *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508 (S.D.N.Y. 2013); *In re GLG Life Tech Corporation Securities Litigation*, 287 F.R.D. 262, 263–64 (S.D.N.Y. 2012). And although Coex Panama is a foreign company, substitute service on a foreign national through its U.S.-based counsel is considered service "within the United States" for the purposes of Rule 45. *In re Procom*, 638 B.R. at 645. Thus, service on U.S.-based counsel would subject Coex Panama to the Court's subpoena power. *Id.* ("When a foreign national is served in the United States, the foreign national is subject to the Court's subpoena power.")

Accordingly, to prevent further delays in discovery, the Court should authorize Cargill to serve Coex Panama by serving subpoenas on its U.S.-based Counsel, Rivero Mestre LLP in Miami, Florida.

**Conclusion**

Accordingly, Cargill requests that the Court enter the following orders pursuant to Rule 45 of the Federal Rules of Civil Procedure:

- **With respect to Raul Alvarez and Alfredo Romero**

Cargill requests an order compelling Mr. Alvarez and Mr. Romero to comply with the subpoenas and (1) produce the requested documents and (2) appear for a deposition at a mutually agreeable date and time on or before August 31, 2022.

In the alternative, if the Court determines that Cargill has not completed the necessary service, Cargill requests that Court authorize it to serve Mr. Alvarez and Mr. Romero through a combination of email and by serving their U.S.-based counsel. Cargill will then serve the witnesses with copies of the subpoenas at their known email addresses and then provide the actual subpoenas, along with the necessary witness fees, to Rivero Mestre LLP, the U.S.-based lawyers currently representing Mr. Alvarez and Mr. Romero.

- **With respect to Corporación Coex, Inc. (Coex Panama)**

Cargill requests that Court enter an order authorizing it to serve subpoenas on Coex Panama through its U.S.-based counsel, Rivero Mestre LLP.

Pursuant to Local Rule 7.1(a)(3), Counsel for Cargill certifies that Cargill has conferred with counsel for the non-parties affected by this motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Dated: July 21, 2022.

/s/ *Traci T. McKee*
Traci T. McKee, Esq., Attorney No. 53088
FAEGRE DRINKER BIDDLE & REATH LLP
1050 K Street NW, Suite 400
Washington, DC 20001
Telephone: (202) 312-7028
traci.mckee@faegredrinker.com
*Admitted only in Florida; supervision by principals of the firm admitted to the D.C. bar.*

**Attorney for Cargill**